UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CIVIL NO. 23-3888 (DSD/EMB)

Andre Duke,

          Plaintiff,

v.                                **ORDER**

Doug Collins,

          Defendant.

This matter is before the court upon the motion for summary judgment by defendant Doug Collins, Secretary of Veterans Affairs (VA). Based on a review of the file, records, and proceedings herein, the court grants the motion.

**BACKGROUND**

This discrimination action arises from the VA's decision to terminate plaintiff Andre Duke's employment as a supervisory financial administrative specialist.

The VA hired Duke as a mail clerk in 2009. He later became a financial administrative specialist and was promoted to supervisory financial administrative specialist in 2015. Brown Decl. Ex. 11.

In 2011, the Department of Labor's Office of Workers' Compensation Programs (OWCP) approved Duke's request for workers'

compensation benefits due to work-related carpel tunnel syndrome, shoulder impingement, and a hand and ulnar nerve injury.  Brown Decl. Ex. 3, at 2; Duke Dep. at 45:6-18.  Duke underwent surgery for those injuries in January 2012.  Brown Decl. Ex. 3, at 2.  As part of the benefits process, Duke's doctors recommended that he work no more than six hours per day.  Id. at 2.

On his return to work, Duke asked the VA for accommodations, which are separate from the workers' compensation process.  Id. Duke's chiropractor submitted a letter on his behalf describing Duke's conditions as "moderately severe and ... permanent in nature."  Id. Ex. 9, at 1.  The chiropractor noted that Duke was limited to: (1) six hours of stooping, bending, sitting, filing, computer work; (2) lifting no more than 10 pounds; and (3) four hours of fine manipulation, repetitive hand motions, reaching, keyboarding, and typing.  Id.  The chiropractor further indicated that Duke should be allowed "intermittent rest breaks" but he did not restrict his overall work hours.  Id.  In addition to the chiropractor's suggestions, Duke requested that he should be permitted to work most of his hours in the morning and daytime, as his condition worsens throughout the day.  Id. Ex. 10.  Duke did not request a shortened workday, nor did he include his doctors' earlier notes restricting his work to six hours per day.  See id.

2

In September 2015, the VA provided Duke with interim accommodations while it attempted to engage with Duke in an interactive process to determine appropriate long-term accommodations. The VA specifically allowed Duke to work a six-hour workday with two hours of unpaid leave, among other accommodations not at issue here. Brown Decl. Ex. 3 at 2. The Department of Labor compensated Duke for the two hours of unpaid leave as part of his workers' compensation benefits. Id. Duke understood that the accommodations were interim in nature. Duke Dep. at 213:2-12; Brown Decl. Ex. 1, at 310:11-18.

Over the next three years, Duke proceeded to work within the bounds of his interim accommodations. The VA contends that the parties were basically at a stalemate during that time because Duke refused to provide additional documentation to support a permanent six-hour workday.

The, in May 2018, the OWCP offered Duke a "new" job, which was the same position he already held but for an eight-hour workday. Brown Decl. Ex. 11. In other words, the offer was designed to end the interim accommodation limiting Duke's workday to six hours. Duke's supervisor explained that the interim accommodation could not continue given the lack of documentation supporting a shortened workday. Id. Ex. 8, at 1; see id. Ex. 9. She also explained, however, that Duke could request a permanent

3

accommodation, which would require "more comprehensive medical documentation." Id. Ex. 8, at 1. Duke rejected the offer as "clearly unreasonable" and "harassment." Id. at 3. He also stated that he had filed charges with the office of resolution management. Id. It is unclear why he did not simply provide medical documentation to support his position. In any event, on May 31, 2018, the VA granted Duke another interim accommodation allowing him to work a six-hour day while the VA awaited updated medical information. Id. Ex. 19, at 3. Duke did not provide that information.

The interim accommodation nevertheless remained in place until mid-2021 when the VA required Duke to undergo a work capacity evaluation. Id. Ex. 17. The doctor who did the evaluation found that Duke suffered from carpal tunnel syndrome and an ulnar nerve lesion. Id. The doctor further concluded that while Duke required certain accommodations, he was able to work an eight-hour shift. Id. Based on these findings, the VA made the same offer to Duke as it had in 2018: same position with accommodations, but for an eight-hour workday. Id. Ex. 18. Duke rejected the offer, again claiming that it was discriminatory. Id. Ex. 19, at 4.

Duke's supervisor responded that the VA would "continue to support the current interim accommodation" pending resolution. Id. Ex. 20, at 3. The VA again asked Duke for updated medical

4

documentation and advised him that the offer of "new" employment would remain open for thirty days.  Id. Ex. 21, at 1-2.  The VA also warned that Duke could lose his workers' compensation benefits if he did not accept the offer.  Id. at 1.  Duke did not accept the offer and the OWCP terminated his benefits.  See id. Ex. 12, at 1.

Duke appealed that decision.  The hearing examiner determined that Duke failed to submit updated medical information supporting his request for a six-hour workday and that he failed to provide evidence that the VA's actions were driven by discriminatory animus.  Id. at 1-2.  The examiner found, however, that the offer of employment was flawed because it did not enumerate the duties to be performed.  Id. at 2.  The examiner remanded the matter for further action and reinstated Duke's benefits in the meantime. Id.

In May 2022, Duke reluctantly agreed to engage in the interactive process to determine appropriate accommodations.  Id. Ex. 23, at 1-2.  The VA again extended Duke's interim accommodation during the process.  Id. at 1.  Discussions ensued, with the VA ultimately determining that Duke was able to work for eight hours per day.  Id. Ex. 26.  The VA offered the following alternative accommodations to a shorted workday: dictation software and as-needed breaks to address his limitations in keyboarding and fine-

5

hand manipulation, and an ergonomic assessment for Duke's home office along with any equipment prescribed by the assessment. Id. Duke declined the offer and again claimed discrimination. Id. Ex. 27, at 3. The VA informed Duke that he was no longer entitled to a six-hour workday and would need to take sick or annual leave if he failed to work an eight-hour day. Id.

Duke continued to work a reduced schedule, which resulted in the VA finding him absent without leave (AWOL). Id. Ex. 28, at 1. On July 13, 2022, Duke, his supervisor, and an employee relations specialist discussed the matter. Id. Ex. 28. Duke claimed discrimination. Id. And the VA again requested updated medical information, which Duke again refused to provide. Id. Multiple communications followed, with the VA explaining the leave policy and Duke maintaining that he was entitled to work a six-hour day. See id. Exs. 29, 30. On September 13, 2022, the VA filed a case report concluding that Duke had been AWOL thirty-six times. Id. Ex. 31, at 1.

After reviewing the case report, the VA issued Duke a proposed removal order on September 30, 2022. Id. Ex. 33. Duke responded through his attorney, admitting that he continued to work six-hour days despite the VA's determination that he could no longer do so, and contending that he was subject to discrimination. See id. Ex. 34; see also id. Ex. 7, at 2-3. The VA terminated Duke's employment

6

effective October 20, 2022, concluding that he had been AWOL and lacked candor in his communications.  Id. Ex. 35.

Duke appealed his removal to the Merit System Protection Board (MSPB), arguing that the VA discriminated against him by failing to provide reasonable accommodations and creating a hostile work environment.  Id. Exs. 38, 39.  The matter proceeded to a hearing. See id. Ex. 1.  The MSPB determined that the VA properly removed Duke from his employment and found that there was no evidence to support a finding of discrimination or hostile work environment. Id. Ex. 5, at 29-30.  Duke appealed that determination to the Equal Employment Opportunity Commission (EEOC), which upheld the MSPB's decision.  Id. Ex. 3.

On December 27, 2023, Duke commenced this action.  His amended complaint alleges that the VA engaged in disparate treatment, maintained a hostile work environment, failed to provide him with accommodations as required by the Americans with Disabilities Act (ADA), and  retaliated against him.  The VA now moves for summary judgment.[1]

_____

[1] Duke failed to respond to the VA's motion with respect to his retaliation and disparate treatment claims.  See ECF No. 43. As such, the court considers those aspects of the VA's motion to be conceded.  See Graham v. Rosemount, Inc., 40 F. Supp. 2d 1093, 1101 (D. Minn. 1999) (holding that a failure to respond to arguments constitutes a waiver of the issue).

**DISCUSSION**

## I.   Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. Id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. Celotex, 477 U.S.C § at 324.  A party asserting that a genuine dispute exists - or cannot exist - about a material fact must cite "particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Celotex, 477 U.S.

8

at 322-23.

## II. Failure to Accommodate

Duke alleges that the VA violated the ADA by failing to provide a reasonable accommodation and failing to engage in the interactive process for finding a reasonable accommodation. The record does not support Duke's allegations.

### A.   Reasonable Accommodation

To establish a prima facie case of failure to accommodate under the ADA, Duke must show that (1) he was disabled; (2) he was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (3) he suffered an adverse employment action due to his disability. Huber v. Wal-Mart Stores, Inc., 486 F.3d 480, 482 (8th Cir. 2007); Burchett v. Target Corp., 340 F.3d 510, 516 (8th Cir. 2003). The first two elements are not in dispute, nor is the fact that Duke suffered an adverse employment action. The only issue is whether Duke was removed from his position due to his disability. The record does not support a causal connection between his disability and removal.

The record shows that Duke was removed because he was AWOL on dozens of occasions in direct violation of the VA's leave policy. He was also removed for lack of candor. The VA spent years accommodating Duke's disability on an interim basis and those same

years attempting to engage in the interactive process to find a permanent solution for his needs.  The VA's ongoing request to Duke was simple: provide updated medical records to support the claim that he would only work a six-hour day.  He failed to do so. When the interim accommodations ended, the VA notified Duke that he could no longer work six-hour days and that any leave he took would have to be annual or sick leave.  Notwithstanding this, Duke continued to work six-hour days without taking appropriate leave for the remaining two hours of his shift.[2]  When it became clear that Duke would not comply with all of his job requirements and refused to provide updated medical information to support the request for a shorter shift, the VA decided to terminate his employment.  That decision was reviewed twice by government agencies and upheld both times.  The court's review yields the same result.  There is no hint in the record of discriminatory animus.  Duke thus has failed to establish a prima facie case of discrimination under the ADA.

---

[2]    The fact that the VA allowed Duke to work six-hour days for several years did not require it to continue doing so without justification.  See Lipp v. Cargill Meat Sols. Corp., 911 F.3d 537, 546 (8th Cir. 2018) (citations, alterations, and quotations omitted) ("If an employer bends over backwards to accommodate a disabled worker ... it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation.").

### B.    Interactive Process

"When an employee requests an accommodation, the Rehabilitation Act requires employers to consider potential solutions by engaging in an 'informal, interactive process.'" Leblanc v. McDonough, 39 F.4th 1071, 1077 (8th Cir. 2022). (citing 29 C.F.R. § 1630.2(o)(3)). To establish that the VA failed to engage in the interactive process, Duke must show that the VA did not make a "good faith effort" to assist him in seeking accommodations and he "could have been reasonably accommodated but for" the VA's lack of good faith. Leblanc v. McDonough, 39 F.4th 1071, 1077 (8th Cir. 2022).

The record firmly establishes that the VA tried over a period of seven years to work with Duke in good faith to find an acceptable permanent accommodation. It provided him with numerous lengthy interim accommodations and sent him numerous communications explaining the accommodation process and what he needed to provide to support his requested accommodation. Based on this record, the court cannot conclude that the VA failed to engage in an interactive process. If anything, the record supports the conclusion that Duke failed to engage with the VA in good faith. He failed to submit updated medical records time and time again, instead deciding to simply follow his unfounded belief that

11

he was entitled to work six-hour days, even when consistently told he could not do so.  This aspect of his ADA claim also fails.

## III. Hostile Work Environment Claim

Duke alleges that he was subject to a hostile work environment based on his subjective belief that his superiors harassed him and engaged in vindictive behavior.  The record is devoid of any support for this claim.

To establish a hostile work environment claim, Duke must show that (1) he is a member of a protected class; (2) he experienced unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment affected a term, condition, or privilege of her employment; and (5) the VA knew or should have known of the harassment and failed to act.  Dowd v. United Steelworkers of Am., Local No. 286, 253 F.3d 1093, 1101 (8th Cir. 2001).  The harassment "must be extreme to amount to a change in the terms and conditions of employment."  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).  The conduct must be both severe and pervasive, viewed objectively and subjectively.  Howard v. Burns Bros., Inc., 149 F.3d 835, 840 (8th Cir. 1998).  "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult, ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment, ... Title VII is violated." <u>Harris</u> <u>v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993) (internal citations and quotation marks omitted).

Duke has utterly failed to establish that he was harassed within the meaning of the law. The communications in the record show that the VA politely tried to engage him in the interactive process and, when that failed, the VA explained to him that he needed to follow the VA's standard leave policy. His feelings of being harassed are simply not supported by the language in those communications – none of which included disparaging remarks about his disabilities. Nor is there any evidence of vindictiveness.

As explained by the EEOC, "asking [Duke] to provide additional medical documents, instructing him to abide by standard leave procedures, finding him AWOL, subjecting him to fact-finding investigations, and requiring that he work a complete 8-hour shift ... did not rise to the level of unlawful harassment." Brown Decl. Ex. 3, at 9. No reasonable jury could conclude otherwise.

## CONCLUSION

Accordingly, based on above, **IT IS HEREBY ORDERED** that:

1.   The motion for summary judgment [ECF No. 33] is granted; and

13

   2.   This case is dismissed with prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  April 9, 2026          /s *Paul A. Magnuson* for
                               David S. Doty, Judge
                               United Stated District Court

14